Good morning your honors and may it please the court. My name is Samuel Weiss and I represent the appellant Mr. Richard Munoz. I'd like to reserve four minutes for rebuttal. The district court granted summary judgment to defendants on Munoz's ADA claim on a single ground that there was no genuine question of material fact whether Munoz had a qualifying disability under the ADA. That opinion was obviously wrong as it relied on law that Congress explicitly abrogated in 2008 ADA Amendments Act. Defendants not defend the district court's decision which alone makes reversal appropriate. Instead they argue for affirmance on one of all two alternative grounds but neither is correct. First defendants argue that Munoz is bringing a claim for inadequate medical treatment not a failure to accommodate a disability but permission to sleep on a lower bunk is a paradigmatic disability accommodation. It does not medically treat knee injuries any more than a wheelchair ramp treats paralysis. Second defendants argue that Dr. Meisner Frisk was not deliberately indifferent to a risk of disability discrimination even though she herself testified that removing a low bunk chrono without examining the patient is inappropriate. I'll address each issue in turn. First Munoz's low bunk chrono was not medical treatment but instead a disability accommodation. Defendants invoke an atextual exception to the ADA from this court's opinion in Simmons versus Navajo County which states that the ADA does not treat inadequate treatment for a disability that is medical care meant to lessen the medical issue causing the disability. Although there's no statutory basis or Supreme Court precedent to support this the operating principle is that Congress could not have intended to replace existing medical malpractice type claims by turning them all into ADA claims. That principle however cannot extend beyond medical treatments disability accommodations which is the very core of the ADA and it's the latter that's clearly at issue here. This court stated in Armstrong that accessible beds are disability accommodations. Dr. Meisner Frisk herself testified multiple times that low bunk chronos are disability accommodations. The Department of Justice has issued regulations stating that safe appropriate housing is required under the ADA. This court in Pierce versus County of Orange stated that adequate bedding comports with the plain text of the relevant terms. Permission to sleep on a lower bunk is not medical treatment. It is a disability accommodation that allowed Mr. Munoz to access the program service or activity of a safe place to sleep despite his substantial limitations on his ability to climb. Yes but counsel isn't the heart of your claim the failure to recognize that there was a disability? Yes your honor that's true. And that was a medical determination? Well yes your honor although Dr. Meisner Frisk testified that all disability accommodations are made by doctors. So defendants don't invoke any authority for this idea that if a doctor says you don't have a disability accommodation then you're not obligated to provide one. Now the knowledge of the doctor does become relevant at deliberate indifference which which we can discuss but the elements of an ADA claim are having a disability having an actual disability and having that which is you know there are several ways to qualify as disabled but actual disability is one of them and then have that having that disability not be reasonably accommodated. So that's adequate to state an ADA claim on its own. So so saying that if if a doctor testifies that she does not believe that he has accommodation then that puts you outside the context of the ADA entirely that would blow this giant hole in the ADA in jails and prisons despite Supreme Court precedent and this court's precedent insisting that it applies. And and I would argue also that it's a particularly odd argument for that there is a material question that he was disabled. So even though it was their primary argument below and even though it was the sole basis of the district courts decision defendants argue that no matter how disabled he was no matter how unreasonable the accommodation if a doctor says that I made a medical determination that this person was not disabled courts are not statutory basis for that in the text of the ADA it goes against the purpose of the ADA which is to is as a broad remedial statute to stand by disability discrimination and it's in conflict with the 2008 amendment to the ADA which had to revise the ADA to stop courts from creating a textual exceptions to keep people out of the ADA entirely. Any concerns that Dr. Meisner Frisk had would become relevant at the reasonableness of an accommodation stage. It would also become relevant here because this case is for damages of the deliberate indifference. What defendants are arguing is something different it's it's that no matter it wouldn't matter that if Munoz was in a wheelchair and it wouldn't it doesn't matter how wrong it doesn't matter how unreasonable the accommodation if a doctor says I don't think you had a disability then you are goes against the whole statutory framework of the ADA which is supposed to focus on the reasonableness of the defendants conduct and not creating formalistic obstacles. I'm sorry I couldn't quite hear that. I don't know that's not clear. Did she ever say he has no disability? I'm not sure that's I'm not sure if it was it was obviously defendants main argument below and it was a district court sole basis of decision but because the evidence in the medical records is so overwhelming that he did have a disability defendants don't even defend that district court decision. I know but I'm just asking what the doctor said. Yeah the doctor said that I think it's fair to say that she said that he had no disability she testified that she looked at his medical records and his medical records were normal is what she testified in her deposition and if you look at his medical records his medical records are replete with a history of knee surgery him begging again and again and again for a low bunk chrono him eventually obtaining one even though she testified that you can only obtain a low bunk chrono by declaration is plaintiff did not display any sign that he was severely impaired or had severe pain and I determined that plaintiff did not have a disability but that's whether he had a disability for which he needed or qualified for a low right I I think that's correct and then my other question the 19 the ADA amendments yeah I'm sort of mystified by this and may not be at all relevant but there actually was no things like laying out rules of construction that they must be read as broadly as possible and it did you know specifically state that the decisions in Toyota Motor Manufacturing which was the sole basis a really strange way to legislate a change because I mean there for a legislature we don't like this opinion but we're not going to do anything to change this statute because I I agree with that your honor but I think it's what it's saying that at the Toyota standard is no more is that right yeah there is yeah so what you're arguing for is as I understand it you want damages yes right that thought that flow from the injury that was sustained because he had a high bump correct and so the determination that you are upset with is the determination by the doctor that he didn't he didn't didn't qualify for a low bump chronic yeah I would say it's less the determination than the revocation of the low bunk row so it's the actually taking it away that that may be a botanic distinction so do we look to the deliberate indifference standard for that sure yes your honor we do and how do you show deliberate indifference well your honor in a few different ways that I I think you know first of all I just remind ourselves in procedural posture we're on summary judgment inferences need to be made in favor of mr. Munoz and and I think perhaps the most striking fact is the dr. Meisner frisk herself testified that it was inappropriate to take away a low bunk rona without personally examining somebody so defendants characterized as sometimes as something like bureaucratic slippage you know negligence is not enough there needs to be and the deliberate indifference in the context of the ADA is different than in the Eighth Amendment it's knowledge of and disregarding a risk of a violation of federal law a violation of the ADA so which is to say a violation of you know a failure to accommodate basically and here dr. Meisner frisk testified that she reviewed his medical records and they were normal and again we we do these string sites you know there's one page 10 of our reply brief time and time and time and time after again where the medical records are not normal they demonstrate he says over and over my knees lock up on a ladder and he begged for years to get a low bunk rona which of course benefits in him in absolutely no way other than it's safer so she's testified that she reviewed those records so she so she knew she saw all records that were full of issues that required a low bunk rona and she also knew that a previous doctor had given him a permanent low bunk rona and she testified that disabilities are verified before ever giving a low bunk rona so she knew that a previous doctor looked at the exact same evidence and said yes we gave him a low bunk rona and perhaps most critically she did not examine him she relied on incredibly unreliable information she said well I saw him twice and he seemed fine to me basically those two appointments had absolutely nothing to do with his knee pain she even testified I didn't examine his gait and she also testified that even if you were able to ambulate correctly that has nothing to do necessarily with your ability to climb you know I'll also note that another thing the medical records are full of is him begging for an MRI which is the only way that would reveal ligament damage and a doctor actually ordered him an MRI and then it was canceled by CDC ours administration so so the idea that there's objective evidence you know she says I looked in the x-rays were okay he didn't say that he had bone damage he said they had ligament damage so the question is did she know of a risk of a failure to I think that's even summary judgment standard where here deliberate indifference is typically a fact-intensive inquiry that is more appropriate for a fact-finder but here the evidence that she was aware of a risk and disregarded it is overwhelming the district court only decided the that's your honor that is one possibility I would just note one thing which is we haven't discussed a lot the the distinction between medical treatment and disability accommodations but I would just note that Simmons versus Navajo County has been cited a couple of dozen times by this court every single time in an unpublished case typically in one sentence and and in prose cases that go against incarcerated plaintiffs so I would say and it's true defendants cite a couple of these cases in their brief that a couple of them frankly do blur the line a little bit between medical care and disability accommodations so I would say last year a district court in the Third Circuit analogously dismissed the case on Bryant versus Madigan which Simmons the Seventh Circuit case that Simmons versus Navajo County cited and the no there's there's a difference here we can't just chuck out disability cases by defendants invoking that what what's a disability accommodation is actually medical treatment it's a very analogous to this case that was an accessible shower instead of an accessible bed so I would say of course that is one option reversing on that basis but I would also say that I think that this court and the disability accommodations like this one and and actual medical treatment and I'll reserve 30 seconds to reserve sure thank you mr. Miller may it please the court Byron Miller on behalf of defendants of Ellie's California Department of Corrections and Rehabilitation and dr. Meisner frisk dr. Meisner frisk found that munos did not have a disability or that was her medical determination and under this course in the sense I read before said what she thought disability meant which is arguably not post Toyota standard and then she said he didn't have it and therefore didn't but was that a medical determination I mean the problem here seems to be that the that a because he's in prison he has no access to outside doctors to see what his actual medical condition is or whether he has a disability so now he has internal doctor who seems to be both a clinician but also the person assigned to determine which what whether accommodations are needed and it was the second half as I understand it that she was seeing that she made the decision about mr. munos is that right so yes and it was a medical determination CDC saw CDC are assigned her to review these lower chronos so that was the well they had a medical doctor do the review so that they can look at the medical evidence and she was the doctor who could look at all of those medical records and she was the one who was able to make that determination and at CDC are that's that's how it works all accommodations generally they go through a medical physician who is going to look at whether they need and we can think of it as outside of the prison context those two roles are usually divorced right you have a doctor making medical determinations and then you have an HR person or an employer or somebody deciding which accommodation and going through the process of deciding which accommodations are necessary here those you have a medical doctor doing it but medical doctor exam I mean perhaps in the outside world an employer would want a physician to verify whether an accommodation was needed and a medical doctor could look at the medical evidence and decide whether it was required or not but if we look at Simmons I think that that provides controlling on-point precedent because in that case it was medical staff at a county jail that put Simmons on suicide watch which meant he didn't have access to outdoor recreation and other programs Simmons then committed suicide and his parents sued under the ADA alleging that his suicide was a result of not having access to outdoor exercise and those programs to treat his depression but this court held that the deprivation of quote programs or activities to lessen his depression was not actionable under the ADA so by analogy just as in Simmons where there was no ADA liability based on the medical determinations about what services or programs that inmate needed for his depression there can't be liability under the ADA here because this case is based on on dr. Meisner frisks medical decision regarding what accommodation he needed for his knee and also that's not this is not what the district court decided you're not defending with the district that's correct the district court didn't decide it and we aren't depending with the district court um ordered on on whether there was a disability and we're not saying that there was no disability I mean there's all sorts of disabilities that he might have had but all we're arguing is that she determined that he didn't have a disability that required a lower bunk and that that was her medical judgment like about I'm sorry and Bryant be Madigan which this court cited to in Simmons it has facts that are even more close to this case and Bryant the plaintiff alleged that he had leg spasms from his paraplegia which caused him to his bed and break his leg he then sued under the ADA because his request for guardrails was denied the Seventh Circuit rejected that claim explaining that quote incompetent treatment for his paraplegia was not actionable under the ADA so whether it's what mr. Weiss says is this wasn't treatment it wasn't gonna make his legs any better unlike in unlike in Brian it was simply a commutation it wasn't going to improve his leg that wasn't the point of it it wasn't so it wasn't a medical treatment well it wasn't it was a medical determination about what he needed though what was being looked at was a for example was should he have had a different treatment for his depression and what he did that's correct so in that I mean the doctors the medical staff need to make a decision well if he's suicidal do we keep him on suicide watch is that going to be better for him or is it gonna be better for him to be out you know programming with other inmates and that that was just the case in Bryant be Madigan which was more similar where it was a guardrail the guardrail was an accommodation so the medical doctor medical professionals couldn't be liable for whether he needed that or not and that that's the case that this court cited to in Simmons and you know to the Muniz's counsel's point about whether this is going to abrogate the ADA entirely in prisons and jails it's not since the Simmons decision in 2010 this court has repeatedly and consistently found that medical denials of accommodations in prison aren't actionable under the ADA those are unpublished cases and they're cited on page 15 and 17 of the answering brief but they include medical denials of shoes for a flat feet medical denial of magnifying glass for poor eyesight medical denial of a typewriter for finger injury so that's how this court has repeatedly interpreted Simmons and all those decisions applying the Simmons rule they don't abrogate the ADA in prisons for example if a medical doctor makes the decision that an accommodation is needed to treat a disability but then the inmate goes out and the officers in the prison discriminate by refusing to provide that accommodation well well that might be an ADA violation but that's not the case we have here where there was an underlying determination about whether he needed it so the medical role here was to go through the medical records that's right your honor and was this we heard reference in your adversaries argument to complaints that he couldn't climb were those in the medical records that were reviewed they were they were there there were there were his subjective complaints that he couldn't climb but you know she also looked at other physicians opinions that he didn't need you know the lower bunk she also looked at the objective evidences x-rays and and to clarify she what she actually testified was that it's possible that an x-ray wouldn't show ligament damage but it could show whether further testing needed to occur so I mean she looked at the evidence she's she's the medical professional I can't really analyze well the MRI came after he fell and when his theory is he fell out of the bunk and then toward his ACL and then that's the injury you know that he's suing for so that's right um and for my understanding he blames those problems on the fall but you know I am not I'm not a doctor I couldn't tell if they were pre-existing or not but the point was that dr. Meisner first was the doctor and she looked at all of the evidence and she came to a medical determination I mean we can look at the the lower bunk chrono as a type of a prescription that a doctor writes there's a special form that the medical staff used to decide whether there's a and the difference between an upper bunk and a lower bunk is that you have to climb into the upper bunk then how could how do you justify simply ignoring that complaint since the other a lot of the other records don't have anything to do with the specific problem that we're dealing with here your honor the policy wasn't to ignore this it was to have a medical doctor look at the issue and that that's what happened here and she looked at it and you know obviously Munoz argues that it was unjustifiable well you know maybe he has cause of action under you know inmates in that position they're not shut out of court there's the Eighth Amendment there's an avenue and they also have medical negligence and Munoz in fact he still has his medical negligence or his negligence claim that was that's left intact that was the the court denied or didn't exercise jurisdiction over that also what do you do with the district court citation to Toyota Motors your honor I mean as as Munoz pointed out in the opening brief there there is a different interpretation of what qualifies as a disability now but you know our point that that's really irrelevant to our point our point is you know whether dr. Meisner first determined that he had a disability or some type of impairment that required the lower bunk so it kind of goes to the underlying determination about whether he had the disability at all doesn't that same problem in fact her determination because when you read what the determination was it in court before I'm not sure I can find it again but it incorporates a notion of severity which is not in other words there's a legal element to what she decided and she seems to have made essentially the same error that the district court did you know dr. Meisner first she's she's not a lawyer I mean what she says is a disability not a lawyer but what she said was based on this review and my previous examinations and observations of plaintiff plaintiff did not display any sign that he was severely impaired or had severe pain and I determined that he did not have a disability from which he needed a follow-up on chrono so her determination is essentially a legal determination that's what she was assigned to do was to make a legal determination decide what whether he but you know what she was assigned to do was make sure that inmates who have lower bunk assignments really needed them so she was it was basically an audit right by a medical doctor medical doctors did this audit to see what did they really need so well if you're talking about disability generally as to he had a disability which needed a follow-up on chrono so what she was doing is applying that standard to a very specific need so not saying I mean disability is defined broadly that's what Toyota that's what we're supposed to do now is look at disability very broadly but she's not looking at he might very well be disabled he might have all sorts of disabilities he might be unable to do other types of activities but she looked at it and decided he didn't have the type of impairment or severe impairment that would prohibit him from getting up to the upper bunk so that's what she decided and you know that kind of goes into the deliberate indifference element which is you know even if you take Munoz's all of his facts the way he presents them in his brief as true will accept all of them but that still doesn't amount to deliberate indifference because what this court said in Duval you're supposed to look at whether there was a quote fact specific investigation and so both Duval and Updike which was also cited in the reply brief they provide examples of what was not sufficient so and Duval there was no fact specific investigation because the plaintiff asked for real-time court reporting so that he could read what was happening in his trial but when he asked for it the county employees quote failed to investigate whether was available they quote made no effort to contact court reporting firms to see if they could provide it and they didn't look into whether their courtroom could even accommodate that type of technology same thing in Updike that provides another example of no investigation where the plaintiff needed a sign language interpreter for his arraignment but the defendants produced quote no evidence that they ascertained what accommodations might be needed so they couldn't get out on summary judgment on deliberate indifference either but the court and Updike came to the opposite conclusion with respect to the state defendants the state defendants didn't look at the right document in the plaintiff's file that showed he needed an interpreter and so they didn't order one for him but there was at least some sort of backgrounding account. Another question about the doctor and whether what she did was a medical determination. Yes. She relied very heavily on this she said she got from a correctional officer was that a medical determination aside from the fact she no idea who it was or what he was supposed to be doing or anything else her reliance on the fact that somebody saw him playing sports was that a medical determination? She considered that in making a medical determination that was part of her fact-specific inquiry so I know Munoz says oh it wasn't he calls into question the accuracy of that report but there's no dispute that she considered it she considered that she considered his and same thing while it's true that she wasn't specifically examining his knee during those visits she could think back about whether he was complaining about the knee whether he showed signs of pain or whether he was showing signs of impairment and she determined that he wasn't so those were all part of her medical determination the facts that she looked over and so that's why you know it doesn't fall within the ADA but even if it does it shows that that was a fact-specific investigation which was you know much more than you know what the State Defendants and Updike did. I see my time is out your honor. Thank you counsel. Thank you. Thank you your honor just a few very brief points so Judge Berzon is absolutely right about the language Mr. Miller quoted in Simmons outdoor exercise lessened his depression that that was the word used in Simmons it made him less depressed a low bunk chrono did not heal his knees it's what what about the Bryant case? Yeah so that's my second point so um the Bryant so basically the law about the guardrails is just simply not the law of the circuit it is quite analogous to this situation but it's not the law of the circuit that decision was made on the basis that a accessible bed is not a program so service or activity under the ADA in fact that opinion said you know the ADA probably doesn't apply in prisons at all I'm almost certain it would be absurd you know the Supreme Court held otherwise 9-0 a couple of years later but but it said that an accessible bed is not a program service or activity this court held in Armstrong this court held in Pierce versus County of Orange that an accessible bed is a program service or activity so that aspect of Bryant versus Madigan has been cited one time in a Simmons versus Navajo County and it was solely cited for the basis that medical malpractice type claims are not covered under the ADA so this the incorporation of its facts it would be troubling for Mr. Munoz were to be incorporated but it can't be because it conflicts with Title 2 ADA DOJ regulations which also say a safe accessible housing is covered under the ADA as well as several published opinions from this court and I would just say a final point about the deliberate indifference about how the other cases are about a failure to investigate this is precisely what we had here she testified that she needed to examine him that it was appropriate to examine him she did not do so instead she relied on examinations where he had absolutely no reason to bring up any of his knee issues because he had a permanent low bunk chrono he hadn't been warned that it would be taken away so he had absolutely no reason my opposing counsel said why didn't he bring up the his knee issues because he had a low bunk chrono at the time he had no idea that it would be taken away with no investigation and she specifically testified she learned nothing about his knees and those appointments they were for totally unrelated things and she did not observe his gait and even if she had observing your gait doesn't necessarily inform you about somebody's ability to climb steps so with that I would I would urge this court to reverse the disrecord and remand. Thank you counsel thank you both for your arguments this morning the case just argued will be submitted for decision and I'll let me tell you we're gonna take a short break before the next case so we'll take five minutes and then we'll be back I'm sorry you're both eagerly waiting I know but we'll be back
judges: Schroeder, Thomas, Berzon